UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BUILDING SERVICE 32BJ HEALTH FUND,

                                        Plaintiff,           20-cv-10136

-against-

                                                                      COMPLAINT

LB&B ASSOCIATES INC.,

                                        Defendant.
------------------------------------------------------------------------X

     Building Service 32BJ Health Fund (the "Fund"), as and for its Complaint against LB&B Associates Inc. ("Defendant") respectfully alleges as follows:

## NATURE OF ACTION

1.     This is a civil action brought pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1145), (hereinafter referred to as "ERISA") and Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185) (hereinafter referred to as the "Taft-Hartley Act"), by an employee health fund for contractual and other equitable relief under ERISA to secure performance by an employer of specific statutory and contractual obligations. This Complaint alleges by failing to comply with a payroll compliance audit, Defendant violated the terms of its collective bargaining agreement, the Trust Agreements and rules and regulations of the Fund, and ERISA.

## JURISDICTION

2.     Jurisdiction of this Court is invoked under the following statutes:

        (a)     Section 502(e)(1) and (f) of ERISA (29 U.S.C. § 1132(e)(1) and (f);

        (b)     Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185);

(c)   28 U.S.C. Section 1331 (federal question); and

(d)   28 U.S.C. Section 1337 (civil actions arising under an Act of Congress regulating commerce).

## VENUE

3.   Venue properly lies in this district under Section 502(e)(2) of ERISA (29 U.S.C. § 1132 (e)(2)).  Service of process may be made on Defendant in any other district in which it may be found, pursuant to Section 502(e)(2) of E.R.I.S.A. (29 U.S.C. § 1132(e)(2)).

## PARTIES

4.   The Fund is a jointly-administered, multi-employer, labor-management trust fund established and maintained pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29 U.S.C. § 186(c)(5)).  The Fund is an employee benefit plan within the meaning of Sections 3(2), 3(3) and 502(d)(1) of E.R.I.S.A. (29 U.S.C. § 1002(2),(3), and 1132(d)(1)), and multi-employer plan within the meaning of Sections 3(37) and 515 of E.RI.S.A. (29 U.S.C. §§ 1002(37) and 1145). The Fund is authorized to maintain suit as an independent legal entity under Section 502(d)(1) of ERISA (29 U.S.C. § 1132(d)(1)). The purpose of the Fund is, *inter alia*, to receive contributions from employers who are parties to collective bargaining agreements with Service Employees International Union, Local 32BJ ("Union"), to invest and maintain those monies, and to distribute health benefits to those employees eligible to receive them. The Fund maintains its office and is administered at 25 West 18th Street, New York, New York 10011, in the City, County, and State of New York.

5.   The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185) which represents employees in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act (29 U.S.C. § 142) and Section 3(4) of E.R.I.S.A.

(29 U.S.C. § 1002(4)).  The Union maintains its offices and is administered at 25 West 18th Street, New York, New York 10011, in the City, County, and State of New York.

6. Upon information and belief, at all times material hereto LB&B Associates Inc. was and continues to be a North Carolina for profit corporation having a principal place of business at 9891 Broken Land Parkway, Suite 400, Columbia, Maryland 21046, and doing business as an employer within the meaning of Sections 3(5) and 515 of E.R.I.S.A. (29 U.S.C. §§ 1002(5) and 1145), and was and is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

7. Upon information and belief, at all times relevant Defendant is party to two collective bargaining agreements (the "Agreement") with the Union. As part of the Agreement, Defendant agreed to make benefit contributions to the Fund on behalf of all eligible employees covered by the Agreement. The two Agreements cover employees performing work at, respectively, the Washington Metropolitan Area Transit Authority ("WMATA") location at 600 5th Street NW, Washington D.C., and the National Archives locations at 700 Pennsylvania Ave. NW, Washington, D.C. and 8601 Adelphi Road, College Park, Maryland.

8. Defendant makes contributions to the Fund on an ongoing basis by way of employer self-reporting in the Funds' Employer Self-Service System ("ESS").  Based on this self-reporting by Defendant, the Funds provide health insurance and Defendant pays the associated contributions on behalf of employees that Defendant asserts are performing covered work. Since contributions are owed based on all eligible covered employees, not merely those reported by Defendant, the Funds periodically audit all employers to (1) ensure that all reported employers were accurately reported, and (2) to verify that no unreported employees were

performing covered work and therefore should have had contributions made on their behalf. Defendant is contractually obligated to fully cooperate with these audits.

9. Each Agreement contains the following language binding Defendant to the Fund's Trust Agreement and collections policies:

> By agreeing to make the required payments into the Funds, the Employer hereby adopts and shall be bound by the Agreement and Declaration of Trust as it may be amended and the rules and regulations adopted or hereafter adopted by the Trustees of each Fund in connection with the provision and administration of benefits and the collection of contributions. The Trustees of the Funds shall make such amendments to the Trust Agreements, and shall adopt such regulations as may be required to conform to applicable law.

10. The Fund's Declaration of Trust confirms that Defendant must, upon request, provide all records requested for a payroll compliance audit that the Fund, or its representative, deems necessary or desirable for a payroll compliance audit:

> Section 6.    <u>Furnishing Requested Information</u>.   The Trustees may call upon the Employers and/or the Union to furnish to the Trustees such information and reports as they may require in the performance of their duties under this Trust Agreement and the Employers and/or Union shall furnish the same when so requested. The Trustees or their representatives, duly authorized in writing, shall have the right to audit, examine and make copies of all or any part of the books and records, cash books, ledgers, contracts, tax returns or reports, or any other book or record which the Trustees deem necessary or desirable in connection with the proper administration of the Trust Fund. In any case that arbitration or legal action becomes necessary to enforce an Employer's obligation to submit to an audit or otherwise provide reports or requested information, the Trustees shall also be entitled to recover any and all expenses of that enforcement action, including, but not limited to, audit fees, counsel fees, arbitration costs and fees, and court expenses.

11. The Fund's rules and regulations confirm that Defendant must fully cooperate with

4

Fund's payroll audits:

> IV. Compliance Audit Program
>
> ….
>
> B.   Employer's duty to cooperate with auditor. Employers are required, pursuant to the Trust Agreements and their collective bargaining agreements, to cooperate with the Funds' auditor by promptly providing all records that are requested to permit the auditors to make a determination regarding the accuracy, completeness, and timeliness of the employer's reports and remittances to the Funds.

12.   The Funds contract with the auditing firm Schultheis & Panettieri, LLP (the "Auditing Firm"), to perform payroll compliance audits of covered employers.

13.   The Auditing Firm consistently requires production of the following documents by employers for payroll compliance audits on behalf of the Funds: complete (1) individual earnings records (payroll history records); (2) weekly payroll journals; (3) timesheets; (4) quarterly state and federal payroll taxes; (5) W-2s; (6) employee roster (identifying all employees, work locations, job titles, hire/term dates), and (7) general ledger/cash disbursements journal (collectively the "Audit Documents").

14.   The Auditing Firm has determined that the complete Audit Documents are necessary to perform a payroll compliance audit of Defendant.

15.   The Funds commenced a payroll compliance audit of Defendant for the time period April 1, 2016 to the present, by way of letter dated August 9, 2019. In this correspondence, and in later communications, the Auditing Firm demanded production of the complete Audit Documents.

16.   Defendant explicitly refuses to cooperate with the payroll audit and will not

provide the complete Audit Documents. Defendant only has agreed to provide certain records regarding employees already reported in ESS. This prevents the Auditing Firm from evaluating whether or not any unreported employees performed covered work.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR EMPLOYER FAILURE TO COMPLY WITH AUDIT)

17. The Funds repeat and reallege each and every allegation contained in paragraphs through 16 of this Complaint as if set forth fully therein.

18. Defendant is obligated, pursuant to the terms of the Agreement and ERISA, to permit and cooperate in the conducting of audits of the books and records of Defendant by the Funds.

19. At all times material herein, Defendant has failed and refused to fully cooperate with the audit of its books and records for the time April 1, 2016 through the present.

20. Absent an injunction from this Court, the Fund has no way of knowing if Defendant is in compliance with the Agreement and ERISA.

21. The Fund will be irreparably harmed without an injunction. Plaintiffs will lose Defendant's contributions while at the same time potentially having to pay out benefits to Defendant's employees. Additionally, covered employees not reported by Defendant will continue not receiving benefits at all.

22. Accordingly, pursuant to the terms and conditions of the Agreement and ERISA, the Fund demands an Order directing Defendant to permit and cooperate with the Fund and/or its designated representatives in the conduct of the aforesaid audit of Defendant's books and records, and for the audit costs already incurred, audit costs that will be incurred, attorney's fees and other damages called for by the Agreements and ERISA.

WHEREFORE, plaintiff Fund demands judgment:

a. for an Order requiring Defendant to permit and fully cooperate in the conduct of an audit by the Fund's auditor of the books and records of the Defendant, for the period April 1, 2016 through the present date.

b. against Defendant. awarding the Fund the audit fees incurred in attempting to perform the payroll compliance audit;

c. against Defendant, awarding the Fund the audit fees that will be incurred in actually performing the payroll compliance audit;

d. against Defendant, awarding the Fund it's attorney's fees incurred as part of this litigation.

e. for such other and further relief as the Court deems just and proper.

Dated: Fort Lee, New Jersey
December 4, 2020

RAAB, STURM & GANCHROW, LLP

By: _____
Samuel R. Bloom (SB1988)
Attorneys for Plaintiff Fund
2125 Center Avenue
Suite 100
Fort Lee, New Jersey
(Tel) 201-292-0150
(Fax) 201-292-0152
Sbloom@rsgllp.com